## COMMONWEALTH *vs.* HORACE C. ANNIS.

On the trial of an indictment for larceny in a shop, the owner testified that the building was a store for the sale of goods by retail, and the judge instructed the jury that they must be satisfied that the building was a shop within the ordinary meaning of that word; and, after defining the meaning of the words " shop " or " store," said that in this country shops for the sale of goods were frequently called stores. *Held*, that the defendant had no ground of exception.

On the trial of an indictment for larceny, there was evidence that the stolen goods were found on the next morning in a certain house, in a trunk, and the owner of the

house testified that the trunk was brought there that morning by two men, one of whom was not the defendant, the other of whom he did not see, but only heard his voice, which he did not think was the defendant's voice, but he would not swear positively ; the attorney for the Commonwealth was then allowed to ask him whose voice it was like, and, upon his answering that it was like the voice of a man who sometimes called him in the morning, to ask him if that man's voice was like the defendant's voice, and he answered that it was. The judge instructed the jury that this was proper evidence from which they might judge whether or not the voice was the defendant's voice, but that they ought not to find that it was without other evidence. *Held*, that the defendant had no ground of exception.

On the trial of an indictment for larceny of goods, afterwards found in a trunk, a receipt to the defendant for rent, also found there, and signed by a man who testifies that he gave it to the defendant personally, is admissible in evidence against him, with instructions that it is not to be regarded by the jury, unless they have other evidence connecting the defendant with the offence.

On the trial of an indictment for larceny, a witness testified that on the next morning he saw two men drive to a house in which the goods were found, carry in a trunk, and then drive away ; and that both men were about the size of the defendant, though he did not know them. *Held*, that the admission of this evidence, accompanied with instructions that it was not of itself sufficient to connect the defendant with the crime, was no ground of exception.

On the trial of an indictment for larceny of goods, afterwards found in a trunk, a witness testified that one evening, about the time of the commission of the larceny, while standing near the place where it was committed, he was asked by the defendant to carry a trunk brought by him and another person to a house then occupied by the defendant ; that he could not fix the night otherwise than that it was two or three nights before he heard of the larceny, of which he heard a few days after it occurred. The judge instructed the jury that upon all the evidence in the case they must be satisfied that this occurred on the night on which the offence was committed. *Held*, that the defendant had no ground of exception.

On the trial of an indictment against a man who had not been seen after the time at which the offence charged was committed until he was brought from another State under a requisition from the governor, the judge instructed the jury that if the defendant fled because he was charged with the crime, it was a suspicious circumstance, which he was called upon to explain, but that they must find that it was a flight, that the burden of proof was not shifted, but remained throughout upon the Commonwealth, and that even if the defendant could not explain his flight, they need not necessarily find him guilty. *Held*, that the defendant had no ground of exception.

Upon the trial of a criminal case, the judge instructed the jury that the evidence was entirely circumstantial ; that if they could not reconcile the facts proved upon any other theory than upon the guilt of the prisoner, they must find him guilty ; but if they could reconcile them with his innocence, they must acquit him. *Held*, that the defendant had no ground of exception.

INDICTMENT for breaking and entering the shop of James A. Pine in the night time, with intent to steal ; and for larceny of the property of Pine, " in a building, to wit, the shop of Pine," on the 26th of October 1858. .

At the trial in the superior court in Suffolk, at January term

1860, before *Putnam*, J., Pine in his testimony spoke of his building as " a store for the sale of millinery, ribbons, silks, &c., by retail." One other witness called it " a shop." The judge instructed the jury that they must find upon the whole evidence that the building was a shop, as alleged in the indictment, within the ordinary meaning of that word, and defined a shop to be a place where goods were sold by retail, and a store to be a place where goods are deposited, but said that in this country shops for the sale of goods were frequently called stores.

There was evidence that the stolen goods were found on the morning after the larceny in a trunk in the house of Samuel McEver ; and McEver testified that the trunk was brought to his house at about six o'clock that morning by two men, one of whom he saw and was not the defendant, and the other he did not see except his shoulder, and only heard his voice, which he thought was not the defendant's, but would not swear positively that it was not. He was then asked by the attorney for the Commonwealth whose voice it was like, and answered that it was like the voice of a man who sometimes called him in the morning. He was then permitted, against the defendant's objection, to be asked if the voice of the man who sometimes called him in the morning was like the defendant's, and answered that it was. The judge instructed the jury that the witness not being willing to swear positively that the voice was not the defendant's, the last answer was proper evidence from which the jury might judge whether or not the voice was his voice, but that they ought not to find that the person was the defendant solely on the ground of similarity of voice, without other evidence.

In the trunk in which the stolen property was found, was found the following receipt for rent, which the Commonwealth proposed to put in evidence : " Boston, November 1st 1857. Received of Mr. Horace C. Annis ten $\frac{50}{100}$ dollars, for one month's rent due this day in advance. John Federhen, Jr."

Federhen testified that he gave this receipt to the defendant personally at its date. The defendant objected to its admission. But the judge admitted it in evidence, and instructed the jury

that the paper of itself was no evidence to convict the defendant, and was not to be regarded by them unless they found other evidence in the case connecting the defendant with the offence; but that if, from other evidence, they had reason to believe that the defendant committed the crime, they might then, and not till then, give such weight to the receipt as they might consider it entitled to.

McNall, a lamplighter, called by the Commonwealth, testified that about four o'clock in the morning after the larceny he saw two men drive rapidly to McEver's house, get out of the carriage, carry a trunk to the door, and, after talking with some one at the door, get into the carriage, and drive quickly away; that he was then three or four rods from them, and both of them were about the size of the defendant, though he did not know them. This evidence was objected to, but was admitted by the judge, with instructions that it was not of itself sufficient to connect the defendant with the crime.

The government called as a witness Michael Coleman, a hackman, who testified that one evening in the latter part of October 1858, between eight and nine o'clock, while standing in Hanover Street, not far from the place where the robbery was committed, he was called upon by the defendant to carry a trunk brought by him and another person to a house in Brighton Street, then occupied by the defendant; that he could not fix the night otherwise than that it was two or three nights before he heard of the larceny; and that he heard of that a few days after it occurred. The judge, against the defendant's objection, admitted the evidence, and instructed the jury that they must be satisfied, upon all the evidence in the case, that this took place on the night in which the offence was committed.

It was admitted that the defendant was not seen in Boston after the night of the offence, though frequently seen as often as five nights in a week before that time; that soon after he left the city he went to Canada, to St. Louis, and thence to Philadelphia, where he was arrested under a requisition from the governor of Massachusetts. The judge instructed the jury that, if they believed that the defendant fled because he was charged

with the crime, it was a suspicious circumstance, which he was called upon to explain, but that they must find that it was a flight; that the burden of proof was not shifted, but remained throughout upon the Commonwealth; and that even if the defendant could not explain his flight, they need not necessarily find him guilty.

Upon the whole case, the judge instructed the jury that the evidence was entirely circumstantial; that if they could not reconcile all the facts proved upon any other theory than the guilt of the prisoner, they must find him guilty; but if they could reconcile them with his innocence, they must acquit him.

The jury found the defendant guilty, and he alleged ex ceptions.

C. H. Hudson, for the defendant.

S. H. Phillips, (Attorney General,) for the Commonwealth.

MERRICK, J. None of the exceptions taken by the defendant can be sustained. The instruction given to the jury, in relation to the proof necessary to establish the fact that the building, or the apartment in it, from which the goods were alleged to have been stolen, was perfectly correct. The testimony of McEver, as to the voice which he heard, and its resemblance in sound to that of the defendant; of the hackman, relative to his being employed by the defendant and another person to carry a trunk to Brighton Street; of the lamplighter, as to what he saw of the two men carrying a trunk early in the morning following the night in which the felony was committed; and that concerning the discovery of the receipt for rent in the trunk in which the stolen property was found, as well as that relative to the absence of the defendant from the city immediately afterwards, indicative of his flight; was all admissible in evidence. The several facts thus disclosed had some tendency to identify him as one of the persons by whom the shop was broken open and the goods in it stolen and carried away, and the evidence tending to prove these facts was therefore competent. All of it was submitted to the jury under proper directions and with suitable caution as to its effect; and it was for the jury to decide upon its

weight, and upon the conclusions to be deduced from the various circumstances tending to show the connection of the defendant with the acts done in the perpetration of the offence charged against him.                                    *Exceptions overruled.*